UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Steven Richard Hilgendorf, Sr. and
Ann Hilgendorf,
        Debtors.

Chapter 13
Case No. 10-37111-svk

**DECISION AND ORDER ON TRUSTEE'S OBJECTION TO CONFIRMATION**

       The Trustee objected to the Debtors' Chapter 13 plan because it provides that the Debtors' tax refunds will be used to shorten the Debtors' plan, rather than dedicated to unsecured creditors. The Trustee argues that the Debtors' plan fails the "disposable income" test of 11 U.S.C. § 1325(b)(1)(B) under which all of the debtor's projected disposable income must be applied to make payments to unsecured creditors under the plan. Disposable income is defined as current monthly income less amounts reasonably necessary to be expended for the debtor's maintenance or support. 11 U.S.C. § 1325(b)(2). The Debtors' income is below the state median, and their reasonably necessary expenses are not constrained by the requirements of 11 U.S.C. § 707(b). *See* 11 U.S.C. § 1325(b)(3).

       In this case, the Debtors' plan provides for payments of $277 per month, and a payment of no less than 1% to their unsecured creditors. The Debtors propose to dedicate one-half of their tax refunds to the plan, but specify that those tax refunds shall shorten the plan to no more than 3 years. In other words, the tax refunds will be used to pay secured and administrative creditors, not unsecured creditors. The Court previously addressed this issue in *In re Spraggins*, 386 B.R. 221 (Bankr. E.D. Wis. 2008), supplemented by 2008 WL 2073947, 2008 Bankr. LEXIS 1512 (Bankr. E.D. Wis. May 14, 2008).

       The Court explained in *Spraggins* that a tax refund technically is not "disposable income" as defined by the Bankruptcy Code. Rather, a tax refund reflects that the debtor has overestimated an expense (taxes owed) and received a refund of the excess amount paid. 386 B.R. at 226, citing *In re Bardo*, 379 B.R. 524 (Bankr. M.D. Pa. 2007). Finding that the refund is actually an overestimated expense, rather than income, does not end the inquiry, because if an expense is inflated, it cannot be reasonable as required by Bankruptcy Code § 1325(b)(2), and therefore must be adjusted. In *Bardo*, a creditor argued that the debtor did not dedicate enough disposable income to the plan by failing to include an income tax refund as income. 379 B.R. at 528. The court rejected the creditor's argument that the refund was disposable income, and observed that the refund represented an overpayment of payroll taxes. *Id.* at 528-29. Rather than requiring the debtor to dedicate the tax refund to the plan, the court recalculated the debtor's disposable income by reducing the debtor's monthly payroll tax deduction by $100. *Id.* The reduction in the tax obligation resulted in an increase in monthly disposable income on Form B22C from $278.91 to $378.91, but the debtor was already dedicating more than that amount to the plan. *Id.*

Treating a tax refund as an adjustment of an expense did not affect the amount that the debtor was required to dedicate to the plan in *Bardo*, but in a similar case, the recalculation rendered the plan unconfirmable. In *In re Forbish,* 414 B.R. 400 (Bankr. N.D. Ill. 2009), the below-median debtor had $2,180 of gross monthly income, $402 of withholding taxes, and monthly expenses of $1,379. Subtracting the expenses from the income (net of taxes), left $400 available for plan payments. The debtor proposed a plan of $400 per month, but the trustee objected, contending that the debtor must also dedicate her tax refunds to the plan as part of the disposable income. The *Forbish* court explained that after BAPCPA, tax refunds are not within the definition of current monthly income (the starting point for determining disposable income) because current monthly income is "pre-tax gross income, determined without regard to the effects of the tax laws." 414 B.R. at 403. From the gross income, the debtor is entitled to deduct reasonably necessary expenses, but by subtracting the amount of taxes withheld from her paycheck, the *Forbish* debtor's tax expense was inflated. When the court recalculated the tax expense (by subtracting one-twelfth of the refund from the monthly taxes withheld), the debtor's plan payment did not provide the requisite disposable income to the plan. *Id.* at 404.

The Debtors apparently followed the same flawed formula in this case. Here, the Debtors' current monthly income on their Form B22C is $3,460.46. Their Schedule I income, net of taxes, is $2,422.93, and their Schedule J expenses total $2,150. The Debtors subtracted their Schedule J expenses from their Schedule I income, resulting in $272.93, and proposed a plan calling for payments of $277 per month. This plan payment does not accurately reflect their projected disposable income because, just like the debtor in *Forbish*, the Debtors have subtracted their withholding taxes, rather than their actual tax expense, to reach the bottom line.

Although the amount of the Debtors' past and anticipated tax refunds are not part of the record, the Court assumes that they are significant, based on the Debtors' monthly withholding of over $550 per month, and the Debtors' proposal to use these tax refunds to shorten the plan. (The Court assumes that the Debtors would not embark on this exercise if the tax refunds were *de minimis*). Even if the tax refunds are fairly small, the fact that the Debtors are receiving them at all likely means that the Debtors are not dedicating the requisite amount of disposable income to their plan. This is because if the Debtors subtracted their actual tax liability (rather than their withholding) and their other reasonably necessary expenses from their gross income, the bottom line almost certainly would increase from the $277 per month that the Debtors have proposed. *See In re LaPlana*, 363 B.R. 259, 266 (Bankr. M.D. Fla. 2007) ("If the debtors become entitled to a future tax refund, they necessarily over-estimated and over-withheld monies from their earned income, whether intentionally or not."). The Debtors should recalculate their disposable income using the actual tax liability. But there are two problems with this solution: (1) the difficulty in correctly calculating the tax liability; and (2) inability of the Debtors who are over-withholding to fund the plan payments required by using the correct tax liability deduction.

The Court faced these hurdles before. In *In re Stimac,* 366 B.R. 889 (Bankr. E.D. Wis. 2007), the Court recognized the complexity in projecting a debtor's actual tax liability due to changes in a debtor's earnings, deductions, credits, and changes in the tax law itself. And the Court is aware that a debtor who customarily uses tax refunds as a "forced savings account" may not have room in his budget to make the higher plan payments required by using the "right" tax

number. In *Stimac*, instead of calculating the actual tax liability, and risking the inability to fund the plan, the Court gave above-median debtors the option to pay one-half of their tax refunds, the traditional requirement in this District, into the plan. *Id* at 894. Other courts have adopted similar "short cuts" to account for debtors' inability to accurately predict their tax liability and the need to retain some of their refunds for unexpected expenses. *See In re Skougard,* 438 B.R. 738 (Bankr. D. Utah 2010) (debtors must dedicate all tax refunds over $1,000, and debtors eligible for earned income credit or additional child tax credit must dedicate all tax refunds over $2,000); *In re Michaud*, 399 B.R. 365 (Bankr. D.N.H. 2008) (trustee suggested that debtors dedicate all refunds over $1,800 to plan, but court adopted individualized rule); *In re Raybon*, 364 B.R. 587, 591-92 (Bankr. D.S.C. 2007) (debtor required to submit all tax refunds less $145 credit showing on Schedule I).

Although *Stimac* involved above-median debtors, the proper deduction of tax liability does not change depending on whether the debtor's income is above or below the state median. Actual tax liabilities are among the "other necessary expenses" that an above-median debtor is entitled to deduct under 11 U.S.C. § 707(b)(2)(A)(ii). And clearly taxes are a reasonably necessary expense for the maintenance and support of a below-median debtor and therefore deductible under 11 U.S.C. § 1325(b)(2)(A). Accordingly, the *Stimac* rule should apply equally in this case: either the Debtors can recalculate their disposable income by deducting their actual tax liabilities, increasing their monthly plan payments, and keeping their tax refunds; or they can dedicate one-half of their tax refunds to the payment of an additional dividend to unsecured creditors for the life of their plan. 366 B.R. at 893-94. The Debtors cannot, as they have proposed here, use the tax refunds to pay secured creditors, and thereby shorten the plan. That would violate the disposable income requirement of § 1325(b)(1), which is specifically directed at unsecured creditors.

The Debtors have argued that use of the tax refunds to pay the car payment that is being paid through the plan is the payment of a reasonable and necessary expense. To the extent that the Debtors would be willing to dedicate 100% of their tax refunds or adjust their tax liability deduction to the appropriate number and increase their plan payments accordingly, the Court would not disagree. However, the Debtors cannot take advantage of the "short cut" of lower plan payments and dedication of the refunds, but dedicating only 50% and using that to pay secured creditors. This proposal strays too far from the requirement that disposable income is to be dedicated to unsecured creditors under the plan. As the court noted in *Raybon*, "[t]hese tax refunds shall not be considered to reduce Debtor's obligation under her chapter 13 plan but are in addition to Debtor's plan payments until such time as unsecured creditors are paid in full or Debtor's Plan is fully performed according to its terms." 364 B.R. at 592.

If the Debtors find that they need the dedicated refunds for an unforeseen expense, they can apply to the Court to keep the refunds. For example in *Michaud*, the court instructed:

> If the debtors believe that retention of some or all of the income
> tax refund payable to the Trustee is necessary for the maintenance
> and support of the debtors or their dependents within the meaning
> of the Bankruptcy Code, the debtors may make a motion, within
> thirty days after they file their tax return showing an entitlement to

3

> a tax refund, seeking an order modifying their obligations under their plan and the confirmation order.

399 B.R. at 373.

And in *Raybon*, the court set out a similar rule:

> Debtor shall submit such refunds to Trustee no later than twenty (20) days after her receipt of such funds or she shall provide Trustee with a certification that she was not entitled to a refund. Alternatively, Debtor may make a motion within thirty (30) days after she files for a state and federal refund for an order modifying her obligations under this Order and the corresponding confirmation order upon a showing that the refund is reasonably necessary to be expended for her maintenance or support pursuant to § 1325(b)(3).

364 B.R. at 592.

In summary, the Court concludes that even below-median debtors can keep their tax refunds in this District, but only by calculating their disposable income using their actual tax liability, not the withholding tax estimate of liability that produces large tax refunds. This method will necessarily increase the debtor's plan payments, to account for the refunds. Or, below-median debtors could shorten their plan to three years by using tax refunds to pay secured and priority creditors, but only if 100% of the tax refunds are paid to the plan for the three-year commitment period, thereby ensuring that the overstatement of the tax expense has been corrected and accounted for. If the debtors propose to use their withholding tax number to calculate disposable income, and to keep one-half of the resulting tax refunds, they must dedicate the remaining half of the tax refunds as an additional dividend to unsecured creditors, or their plan cannot survive the objection of the Trustee or an unsecured creditor under 11 U.S.C. § 1325(b)(1)(B). Debtors who have dedicated their tax refunds to the plan can apply to the Court (after filing the return and before receipt of their refund) showing that the refund is reasonably necessary to be expended for the debtor's or the debtor's family's maintenance and support.

The Trustee's Objection to confirmation is sustained, and the Debtors may have 30 days to file an amended Plan or this case will be dismissed.

It is so ordered.

Dated: February 2, 2011

By the Court:

*Susan Kelley*

Susan V. Kelley
U.S. Bankruptcy Judge